UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

BRIAN BENNETT,

    Plaintiff,

v.                                          CASE #

LIFE INSURANCE COMPANY
OF NORTH AMERICA and NEW
YORK LIFE INSURANCE COMPANY,

    Defendant.
_____/

## COMPLAINT

The Plaintiff, BRIAN BENNETT (BENNETT), sues Defendants, LIFE INSURANCE COMPANY OF NORTH AMERICA, (LICNA), and NEW YORK LIFE INSURANCE COMPANY (NEW YORK LIFE), and states:

### Jurisdiction and Venue

1. This is an action for relief under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et. seq.

2. This Court has jurisdiction pursuant to ERISA § 502, 29 U.S.C. §1132.

3. All matters described in this Complaint arise out of BENNETT's employment with Aldi, Inc. (ALDI), at a location within this District.

4. Aldi is the Plan Sponsor of an employee benefit plan providing disability benefits to its employees (the Plan). At all relevant times, BENNETT is and/or was a participant in the Plan incident to his employment.

5. At all relevant times, the Plan was funded through an insurance policy issued by LICNA, a foreign corporation engaged in business within this District.

6. As described below, BENNETT made a claim for benefits under the Plan and the insurance policy issued by LICNA, and NEW YORK LIFE made all of the claim decisions on BENNETT's claim.

7. Venue is proper within this District.

## Standard of Review Applicable to this ERISA Action

8. Aldi funded its Plan by purchasing a group policy of insurance (Policy # LK-0961017) issued by LICNA. A copy of the Long Term Disability policy is attached hereto as Exhibit "A."

9. LICNA is a necessary party to this action, because any benefits awarded to BENNETT must be paid by LICNA

10. NEW YORK LIFE made benefits determinations under the group policy it issued to the Plan, including the determination made on Plaintiff's claim.

11. NEW YORK LIFE is a necessary party to this action because it is the Claim Administrator and must effectuate any award of benefits awarded to BENNETT by this Court.

12. The Plan's terms do not grant discretionary authority to NEW YORK LIFE. Alternatively, the Plan Administrator or Plan Sponsor did not properly delegate discretion to NEW YORK LIFE.

13. The Long Term Disability group policy was drafted in its entirety by LICNA.

14. The Long Term Disability group policy is a contract of adhesion.

15. LICNA and ALDI use the group insurance policy issued by LICNA (Exhibit A) as the Plan document.

16. No other plan documents exist other than the group insurance policy (Exhibit A).

17. No originating plan document exists that instituted the Plan.

18. No originating plan document or other document exists in which Aldi reserved any discretionary authority to itself in relation to the Plan.

19. The employees or agents of Aldi and LICNA did not discuss or correspond about the existence, meaning, or significance of delegating discretionary authority from ALDI to LICNA.

20. At the inception of the Plan, Aldi did not retain to itself the authority to delegate discretionary authority of any type to an insurance company from which it was to purchase an insurance policy to fund the Plan.

21. At the time it purchased the Long Term Disability group insurance policy from LICNA, Aldi did not have any discretionary authority which it could delegate to an insurance company.

22. Even assuming for the sake of argument that Aldi had retained discretionary authority to delegate, at the time the Plan was created, NEW YORK LIFE was not contemplate as an entity to which claim decisions or discretion would be delegated.

23. At all relevant times, LICNA did not have authority on behalf of itself or Aldi to delegate any discretionary to NEW YORK LIFE.

24. There is no mention of any delegation of discretion to NEW YORK LIFE within the four corners of the Long Term Disability group insurance policy which funds the Plan.

25. Even if LICNA was delegated discretionary authority, it was not the entity that made claim decisions related to BENNETT's claim, and it did not exercise any discretion over BENNETT's claim decision.

26. NEW YORK LIFE was not delegated discretionary authority such that its claim decision is entitled to a discretionary or arbitrary and capricious standard of review, because of one or more of the following:

 a) ALDI never had the authority to delegate discretion to LICNA following the inception of its disability plan;

 b) Discretionary authority is a material concept that LICNA never discussed or negotiated with ALDI;

 c) The Long Term Disability group insurance policy is a contract of adhesion drafted entirely by the funding source company which cannot inject discretion into the plan for the first time;

 d) If it had the power to delegate discretion, ALDI did not properly delegate discretionary authority over claims decisions to LICNA.

 e) If LICNA had discretionary authority, it did not exercise any such discretion over BENNETT's claim decision.

 f) NEW YORK life was never properly delegated discretionary authority over claims decisions, including over BENNETT's claim.

27. For one or more of the reasons stated above, de novo review applies to this action.

## COUNT I
## Claim for Disability Benefits Under the Plan

28. Plaintiff incorporates by reference and alleges the preceding paragraphs as if full stated in this Count.

29. BENNETT stopped working on June 26, 2019, because he was undergoing treatment for stage 4 colon cancer.

30. At all relevant times, a Plan participant is and was eligible to receive Long Term Disability benefits when the participant meets the following definition stated in the group insurance policy funding the Plan:

> You are considered Disabled if, solely because of Injury or Sickness, you are:
>
> 1. unable to perform the material duties of your Regular Occupation; and
> 2. unable to earn 80% or more of your Indexed Earnings from working in your Regular Occupation.
>
> After Disability Benefits have been payable for 24 months, you are considered Disabled if, solely due to Injury or Sickness, you are:
>
> 1. unable to perform the material duties of any occupation for which you are, or may reasonably become, qualified based on education, training or experience; or
> 2. unable to earn 80% or more of your Indexed Earnings.

31. BENNETT applied for Long Term Disability benefits under the Plan.

32. NEW YORK LIFE approved BENNETT's claim for Long Term Disability benefits.

33. NEW YORK LIFE terminated BENNETT's claim for Long Term Disability benefits on March 30, 2022.

34. The basis for NEW YORK LIFE's initial denial was that BENNETT did not meet the Plan's definition of disability because it claimed BENNETT was no longer disabled under the terms of the policy.

35. BENNETT submitted a timely appeal of the denial of benefits to NEW YORK LIFE on September 26, 2022.

36. At all relevant times, BENNETT met the terms of the Plan's definition of "disabled."

37. As a result of BENNETT's extensive chemotherapy treatment of his stage 4 colon cancer, BENNETT was diagnosed with sensory axonal polyneuropathy.

38. BENNETT's condition causes him to have trouble with fine motor skills and movements, even for simple everyday tasks such as dressing himself.

39. On September 8, 2022, BENNETT's doctor, Paul Wakefield, M.D, completed a Residual Functional Capacity Questionnaire and stated that BENNETT is unable to walk a city block without rest or severe pain, and is likely to be "off task" for 25% day or more due to his condition.

40. On September 26, 2022, BENNETT underwent a Vocational Evaluation with Ashley H. Johnson, MS, CRC, CLCP. Johnson found BENNETT is limited to less than sedentary work as he has significant limitations in his ability to use his hands, fingers, and arms.

41. BENNETT's treating providers have not issued a release to return to work.

42. BENNETT has met the definition of total disability based upon objective restrictions and limitations stemming from objective medical evidence and conditions.

43. On November 21, 2022, NEW YORK LIFE upheld its original decision and denied BENNETT's appeal, stating it reviewed the complete file in its entirety and determined BENNETT does not meet the definition of disabled under the plan.

44. On the same letter dated November 21, 2022, LICNA claimed to give BENNETT the opportunity to comment on the peer reviews who reviewed BENNETT's medical records even though NEW YORK LIFE had already made a decision.

45. NEW YORK LIFE has refused to pay the benefits sought by BENNETT and as grounds for such refusal has alleged that Plaintiff does not meet the definition of disability in the Plan.

46. With respect to all claims made herein, BENNETT has exhausted all administrative/pre-suit remedies.

47. BENNETT is entitled to certain benefits under the Plan consisting of benefits for Long Term Disability from March 23, 2022, through the date of filing this action.

48. BENNETT's gross plan benefit is $4,173.00 per month.

49. There are 8.2 months of past-due monthly benefit payments owed through the date of filing this action

50. NEW YORK LIFE has deprived BENNETT of the aggregate sum of $34,632.06.

51. Plaintiff is entitled to benefits herein because:

   a. The benefits are permitted under the Plan.

   b. Plaintiff has satisfied all conditions to be eligible to receive the benefits.

   c. Plaintiff has not waived or relinquished entitlement to the benefit.

52. Each monthly benefit payment owed is a liquidated sum and became liquidated on the date the payment was due and payable. Plaintiff seeks prejudgment interest on each such payment.

53. Pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), BENNETT is entitled to an award of reasonable attorney fees and costs incurred in an action brought under ERISA. Plaintiff has been required to obtain the undersigned attorney to represent her in this matter and has agreed to a reasonable attorney fee as compensation to her for her services.

## COUNT II
## Claim for Life Insurance Waiver of Premium Coverage

54. Plaintiff incorporates by reference and alleges paragraphs 1 through 27 as if full stated in this Count.

55. At all relevant times, BENNETT was a Plan participant in a welfare benefit plan sponsored by Aldi which provided a death benefit to participants and their beneficiaries.

56. BENNETT does not have a copy of the death benefit/life insurance plan, but avers that Defendants possess the plan documents.

57. Based upon correspondence from NEW YORK LIFE, BENNETT is and was eligible to receive the Life Insurance Waiver of Premium Coverage when he met the following definition stated in the group insurance policy funding the Plan:

> An Employee is Disabled if, because of Injury or Sickness, he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience.

58. On February 19, 2020, BENNETT claim for the Waiver of the Life Insurance Premium was approved continuing his life insurance coverage without a premium.

59. On March 31, 2022, NEW YORK LIFE terminated BENNETT's Waiver of the Life Insurance Premium and notified BENNETT's that he needed to pay his premium to continue his life insurance coverage.

60. The basis for NEW YORK LIFE's initial termination was that BENNETT no longer met the definition of disabled for the Waiver of Premium Coverage because BENNETT's Long Term Disability Claim was denied.

61. NEW YORK LIFE's March 31, 2022, termination letter made no mention of NEW YORK LIFE assessing a) the cognitive aspect of working, b) the impact of BENNETT's physical impairments on these cognitive abilities, or c) attendance requirements of work.

62. BENNETT submitted a timely appeal of the termination of the waiver of the life insurance premium of benefits to NEW YORK LIFE on September 26, 2022.

63. At all relevant times, BENNETT met the terms of the Plan's definition of "disabled."

64. BENNETT's treating providers have not issued a release to return to work.

65. On November 21, 2022, LICNA upheld its original decision and denied BENNETT's appeal, stating it reviewed the complete file in its entirety and determined BENNETT does not meet the definition of disabled under the plan.

66. On the same letter dated November 21, 2022, NEW YORK LIFE claimed to give BENNETT the opportunity to comment on the peer reviews who reviewed BENNETT's medical records even though NEW YORK LIFE had already made a decision.

67. With respect to all claims made herein, BENNETT has exhausted all administrative/pre-suit remedies.

68. BENNETT is entitled to waiver if life insurance premium under the Plan from March 31, 2022, through the date of filing this action.

69. With respect to all claims made herein, BENNETT has exhausted all administrative/pre-suit remedies.

WHEREFORE, the Plaintiff, BRIAN BENNETT, asks this Court to enter judgment against the Defendants, NEW YORK LIFE INSURANCE

COMPANY and LIFE INSURANCE COMPANY OF NORTH AMERICA, finding that:

(1) The Plaintiff is entitled to Life Insurance Waiver of Premium benefits from March 23, 2022, through the filing of this lawsuit; and

(2) The Plaintiff must be reinstated into his Life Insurance coverage with waiver of premium at the coverage amount required by the Plan; and

(3) The Plaintiff must be awarded reasonable attorney fees and costs incurred in this action; and

(4) For such other and further relief as this Court deems just and proper, including but not limited to:

   a. a declaration that Plaintiff's same claim for benefits continues after the last date of benefits awarded by the Court, without need to file a new application for benefits, and

   b. remanding Plaintiff's claim to the Plan Administrator for further action to address continuing benefits after the final date of benefits awarded by this Court, and

   c. ordering Defendant to advise Plaintiff's former employer or any other necessary entity that benefits in this action were properly paid through the date of this Court's Order awarding benefits for purposes of coordinating or reinstating any ancillary benefits which should properly be paid or for

which coverage should be awarded as a result of Plaintiff's receipt of disability benefits under the Plan.

Signed this 5th day of December 2022.

    /s/ John v. Tucker
JOHN V. TUCKER, ESQUIRE
Florida Bar # 899917
TUCKER DISABILITY LAW, P.A.
5235 16th St. North
St. Petersburg, FL 33703
Tel.: (727) 572-5000
Fax: (727) 571-1415
tucker@tuckerdisability.com
*Lead Attorney and Trial Counsel for the Plaintiff*